**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

**J. FLEET OIL & GAS
CORPORATION, L.L.C., ET AL.**

**CIVIL ACTION NO. 15-2461**

**VERSUS**

**JUDGE S. MAURICE HICKS, JR.**

**CHESAPEAKE LOUISIANA, L.P., ET AL.**

**MAGISTRATE JUDGE HORNSBY**

## <u>MEMORANDUM RULING</u>

Plaintiffs J. Fleet Oil & Gas Production Company, L.L.C. and Martin Producing, L.L.C. (collectively "Plaintiffs") are before the Court on a Motion for Reconsideration (Record Document 51) of the Court's Memorandum Ruling (Record Document 46) (the "Ruling") granting defendants Chesapeake Louisiana, L.P., Chesapeake Operating, L.L.C., and Chesapeake Energy Marketing, L.L.C.'s (collectively "Defendants") Motion for Partial Summary Judgment (Record Document 34). For the following reasons, Plaintiffs' Motion for Reconsideration is **DENIED**.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure do not recognize a motion for reconsideration per se; however, the Fifth Circuit has recognized that such motions may challenge a judgment or order under Rules 54(b), 59(e), or 60(b). <u>See, e.g.</u>, <u>Southern Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.</u>, 921 F. Supp. 2d 548, 564 (E.D. La. 2013) (noting, however, that Rules 59 and 60 apply only to final judgments). Where a motion for reconsideration concerns an interlocutory order, as in the present case, such a motion is generally evaluated under the same standards that govern motions to alter or amend a judgment under Rule 59(e). <u>See id.</u> at 565. Under Rule 54(b), the court is given broad

discretion to "reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." Melancon v. Texaco, Inc., 659 F.2d 551, 553 (5th Cir. 1981). "The exact standard applicable to the granting of a motion under Rule 54(b) is not clear, though it is typically held to be less exacting than would be a motion under Rule 59(e) . . . ." Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp., 259 F. Supp. 2d 471, 475 (M.D. La. 2002) (citations omitted). Generally, a motion to alter or amend a judgment under Rule 59(e) may be granted for the following grounds: "(1) to correct manifest errors of law or fact upon which judgment is based; (2) the availability of new evidence; (3) the need to prevent manifest injustice; or (4) an intervening change in controlling law." In re Self, 172 F. Supp. 2d 813, 816 (W.D. La. 2001).

"Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004). In fact, the Fifth Circuit has noted that the standards for Rule 59(e) "favor the denial" of such motions. Southern Constructors Group, Inc. v. Dynalectric Co., 2 F.3d 606, 611 (5th Cir. 1993). Furthermore, motions for reconsideration are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment . . . . Rather, Rule 59(e) serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." Templet, 367 F.3d at 479 (citations omitted). "When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted." Southern Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc., 921 F. Supp. 2d 548, 566 (E.D. La. 2013).

**ANALYSIS**

**I)    The Court's Use of Non-Louisiana Jurisprudence**

Plaintiffs' first argument is that the Court erred in "relying upon the laws of other states, specifically Texas, in its Ruling." Record Document 51-1 at 9. Plaintiffs argue that the Agreement at issue in this case contained a choice of law provision, which provided that it "shall be governed by Louisiana law." Id. Therefore, Plaintiffs argue, any reliance upon non-Louisiana jurisprudence is improper. It should be noted that Plaintiffs already raised this argument in their opposition to the underlying Motion for Partial Summary Judgment, and that the Court responded to this argument in its Ruling. See Record Document 46 at 16 & 17. As such, Plaintiff is simply rehashing a legal argument made in earlier briefing, which is inappropriate in a motion for reconsideration. Southern Snow Mfg. Co., 921 F. Supp.2d 548 ("It is well settled that motions for reconsideration should not be used to re-urge matters that have already been advanced by a party"). However, the Court will briefly address Plaintiffs' concerns.

To be clear, Louisiana law was, in fact, applied in the Court's Ruling. Specifically, the Court applied Louisiana law regarding the interpretation of contracts. See Record Document 46 at 5 & 6. In doing so, the Court used non-Louisiana cases merely as persuasive authority in the absence of any Louisiana Supreme Court jurisprudence directly on point. The use of persuasive authority is a common practice and has been used by Louisiana courts when applying the Louisiana law on contract interpretation. See Henry v. Ballard & Cordell Corp., 418 So.2d 1334 (La. 1982) (relying on jurisprudence from other jurisdictions to decide a *res nova* issue of interpretation of an oil and gas

contract). Therefore, Plaintiffs' argument that the Court improperly relied upon non-Louisiana jurisprudence is rejected.

### II) The Court's Interpretation of "Overriding Royalty Interest"

Plaintiffs make several arguments regarding the Court's interpretation of the term "overriding royalty interest" ("ORRI"). First, Plaintiffs argue that the Court "seemed content to simply label Plaintiffs' interest as an [ORRI] and conclude its investigation . . . ." Record Document 51-1 at 10. According to Plaintiffs, the Court should have looked beyond the mere label ORRI to determine its substantive characteristics and legal effects. See id. In support of this argument, Plaintiffs cite to Matter of Senior-G & A Operating Co., for the proposition that courts must look beyond the superficial labels of a *transaction* and examine the substance of an *agreement*. 957 F.2d 1290, 1296 (5th Cir. 1992).

First, Plaintiffs' argument mischaracterizes the Court's treatment of this issue. The Court was not "content" to label Plaintiffs' interest as an ORRI and end its investigation. In fact, the Court dedicated four pages of its Memorandum Ruling to the interpretation of the term ORRI. See Record Document 46 at 8 – 11. Second, Plaintiffs are confusing a transaction with its terms. Here, the Court did, in fact, look beyond the label of the transaction when it determined that the "assignments" at issue in this case are subleases. See Record Document 46 at 7. The Court then applied Louisiana law on contract interpretation to the terms of the Agreement and determined that it unambiguously reserved an ORRI, a technical term in the oil and gas industry, in favor of Plaintiffs on each lease subject to the Agreement. See Record Document 46 at 8.

Plaintiffs' next argument regarding the Court's interpretation of the term ORRI is that there is a difference between an interest reserved by a lessor and an interest

reserved by a working interest owner, and that by adopting the interpretation of ORRI that it did, the Court improperly treated Plaintiffs as lessors. See Record Document 51-1 at 15. The Court has considered Plaintiffs' argument and has concluded that it properly treated Plaintiffs as sublessors with a reserved ORRI on each lease.

Prior to entering into the agreement at issue with Chesapeake, Plaintiffs were working interest owners. As noted above, the Court determined that Plaintiffs then entered into an agreement by which their interests were subleased to Chesapeake. See Record Document 46 at 7. Plaintiffs only reserved an ORRI on each lease. The reservation of an ORRI on an assignment or sublease is a common practice, and it is in this context that the term ORRI has the unambiguous, technical meaning recognized by the Court in its Ruling. See 2 Williams & Meyers, Oil and Gas Law § 418 (2018) ("The usual occasion for the reservation of an override is the transfer of a lease or a portion thereof, the lessee-assignor retaining an interest in production from the assigned lease in the form of an overriding royalty"); see also Pinnacle Operating Co. v. ETTCO Enters., 914 So.2d 1144 (La. App. 2 Cir. 10/26/05) ("An overriding royalty is an interest severed out of the working interest or lessee's share of the oil, free of the expenses of development, operation and production"); see also Chesapeake Exploration, LLC v. Hyder, 483 S.W.3d 870, 873 n.14 (Tex. 2016) ("One of the most important aspects of an 'overriding royalty' (whether reserved by the lessor in a lease . . . or created by a subsequent instrument executed by the lessee . . .) is that it is a "royalty," viz., in the absence of an express agreement to the contrary it is . . . subject to the costs to which the lessor's royalty is subject."). Thus, the Court finds that it properly treated Plaintiffs as sublessors with reserved ORRIs on each lease.

Plaintiffs also make several arguments suggesting that the Court should have looked beyond the four corners of the Agreement in interpreting the term ORRI. However, the Louisiana law of contract interpretation is clear that "when the language of a contract is clear and unambiguous, it must be interpreted solely by reference to the four corners of that document." Dickson v. Sklarco L.L.C., 2013 WL 1828051, at *3 (W.D. La. Apr. 29, 2013). Additionally, the law is clear that words of art and technical terms must be given their technical meaning when the contract involves a technical matter. See La. Civ. Code Art. 2047. Here, as is reinforced above, the Court properly determined that the term ORRI is an unambiguous, technical term in the oil and gas field. Therefore, the law prohibits the Court from considering extrinsic evidence of the parties' intent.

Plaintiffs' final argument regarding the term ORRI is that the Court made inappropriate credibility determinations at the summary judgment stage. Specifically, they argue that the Court erred when it stated that "'[o]verriding royalty' is a term of art, pregnant with meaning and legal consequences of which defendants as sophisticated parties surely were aware." Record Document 46 at 8 (quoting Shell Offshore, Inc. v. FMP Operating Co., 1988 WL 125455, at *3 (E.D. La. 1988)). According to Plaintiffs, it was inappropriate to consider the parties' level of sophistication at this stage. The Court rejects this argument. As stated above, Louisiana Civil Code Article 2047 requires that words of art and technical terms be given their technical meaning when the contract involves a technical matter. This rule is "no doubt of common law origin, as is suggested by § 202 of the Restatement of the Law, Second, Contracts (1981)." La. C.C. art. 2047 cmt. c. Section 202 of the Restatement of Contracts explains why the adoption of technical terms is appropriate. Particularly, it states that, "[p]arties to an agreement often use the

vocabulary of a particular place, vocation or trade, in which new words are coined and common words are assigned new meanings." Restatement (Second) of Contracts § 202 (1981). Here, the Court did not engage in a credibility determination. The Court took the undisputed fact that the parties are sophisticated oil and gas companies into consideration for the sole purpose of recognizing the appropriateness of the Court's application of Article 2047, as the parties are clearly the type to use the vocabulary of a "particular . . . vocation or trade." Id. Therefore, this argument is also rejected.

### III) The Court's Interpretation of "Development, Production, and Operating Expense"

In their opposition to the Motion for Partial Summary Judgment, Plaintiffs argued that the phrase "all development, production, and operating expense[s]" prohibits Chesapeake from deducting expenses that might be labeled "post-production costs." See Record Document 39 at 17. However, the Court concluded in its Ruling that the parties unambiguously intended to share in any post-production costs, despite the above language, which the Court found to only exclude costs which might be labeled "production costs." Record Document 46 at 13 & 16.

Plaintiffs make several arguments in the current Motion for Reconsideration regarding the interpretation of the term "operating expenses," despite not making these arguments in their opposition to the Motion for Partial Summary Judgment (Record Document 34). As such, the Court believes that it is improper to raise these arguments in a motion for reconsideration. See Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004). ("[A motion for reconsideration] is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment…."). However, even if they have been properly raised in Plaintiffs'

Motion for Reconsideration, the Court finds that it did not err in concluding that the phrase "development, production, and operating expenses" unambiguously excluded only costs which may be labeled production costs.

Plaintiffs' first argument regarding the term "operating expenses" is that in the context of a working interest owner, post-production costs fall under the "all-encompassing term 'operating expenses.'" Record Document 51-1 at 16. Therefore, because the agreements at issue exclude "operating expenses" from those costs to be deducted from Plaintiffs' ORRI payments, Plaintiffs argue that the deduction of post-production costs by Defendants was improper. The Court rejects this argument.

Operating expense is a well-known term of art in the oil and gas industry. Operating expenses are "expenses incurred in the operation of a producing property." 8 Williams & Meyers, Oil and Gas Law Scope (2018). "Operate" can be defined as any activity leading to the *production* of oil and gas. Broussard v. Hilcorp Energy Co., 2009-0449 (La. 10/20/09), 24 So. 3d 813, 819 (emphasis added). It is generally accepted that the *production* phase of oil and gas operations terminates at the wellhead when the minerals are reduced to possession. See Babin v. First Energy Corp., 96-1232 (La. App. 1 Cir. 3/27/97), 693 So.2d 813, 815 (emphasis added). Additionally, the general rule is that a royalty owner is liable for a proportionate share of the costs incurred subsequent to production. See id. However, operating expenses are the burden of the owner of the working interest in the property and a royalty interest is free of the burden of such expenses. 8 Williams & Meyers, Oil and Gas Law Scope (2018). It follows from this that operating expenses are correctly categorized as a type of production cost, for if they included post-production costs, they would be shared, by default, by the royalty owner.

Although Plaintiffs argue that the term has a different meaning in the context of a working interest owner, they cite to no legitimate authority for this proposition. Plaintiffs cite Lege v. Lea Expl. Co., 631 So.2d 716 (La. App. 3d Cir. 1994) for the proposition that operating expenses are "classified as 'expenditures incurred in the daily operation of a well,' which includes costs that would be considered post-production costs for a lessor." Record Document 51-1 at 17. The Court has reviewed this case and finds that Plaintiffs' reliance on the case is misplaced. While the case does state that "there is no rule which strictly forbids allocation of certain 'extraordinary expenses' incurred post-production from being allocated to the capital expenditure category," it says nothing about post-production expenses being categorized as operating expenses. Lege at 719. Additionally, the case describes operating expenses as "expenditures incurred in the daily operation of a well." Id. This lends further support to the proposition that operating expenses are a type of production cost.

Plaintiffs' next argument regarding the term "operating expenses" is that the Court should have gone beyond the four corners of the agreements, because "the parties have radically different interpretations of what costs are encompassed in the term 'operating expenses.'" However, a mere disagreement over the meaning of a term does not create ambiguity. It is necessary that the term be susceptible of two or more reasonable interpretations. Blanchard v. Pan-OK Prod. Co., Inc., 32,764 (La. App. 2 Cir. 4/5/00), 755 So. 2d 376. Here, as has been outlined above, the term was not susceptible to more than one reasonable interpretation. Therefore, the Court properly determined that the parties unambiguously intended to share *pro rata* in post-productions costs.

**CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Reconsideration (Record Document 51) is hereby **DENIED**. An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 7th day of June, 2019.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT